J. S45026/16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| SHANE LENELL MCCROMMON | : | |
| Appellant | : | |
| | : | No. 1749 WDA 2015 |

Appeal from the Judgment of Sentence July 13, 2015
In the Court of Common Pleas of Westmoreland County
Criminal Division at No(s): CP-65-CR-0004830-2013

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| SHANE LENELL MCCROMMON | : | |
| Appellant | : | |
| | : | No. 1750 WDA 2015 |

Appeal from the Judgment of Sentence July 13, 2015
In the Court of Common Pleas of Westmoreland County
Criminal Division at No(s): CP-65-CR-0005377-2014

BEFORE: OLSON, DUBOW AND PLATT, JJ.[*]

MEMORANDUM BY DUBOW, J.:                    **FILED AUGUST 10, 2016**

Appellant, Shane Lenell McCrommon, appeals from the Judgment of

Sentence entered in the Court of Common Pleas of Westmoreland County on

July 13, 2015.  We affirm.

---

[*] Retired Senior Judge Assigned to the Superior Court.

On October 24, 2013, the Commonwealth charged Appellant with one count each of Third Degree Murder and Aggravated Assault[1] arising from the death of Jeffrey Edwards (the "Victim"). On November 4, 2014, in a separate criminal information, the Commonwealth charged Appellant with Criminal Solicitation-Hindering Prosecution,[2] alleging that Appellant attempted to solicit two people to contact proposed Commonwealth witnesses to prevent or alter their testimony at Appellant's trial on the Murder and Aggravated Assault charges. The trial court consolidated these cases for purposes of trial.

On March 30, 2015, at Appellant's Pre-Trial Conference, his counsel filed a Motion for Continuance, which the trial court denied. Trial commenced on April 7, 2015. Prior to empaneling the jury, Appellant's counsel again moved for a continuance in order to obtain an expert witness. The trial court likewise denied this Motion, although the court permitted Appellant to contact an expert witness if so desired. Appellant also filed a Motion in Limine prior to the commencement of trial seeking to suppress letters the Commonwealth sought to use as evidence in support of its Hindering Prosecution charge, which the trial court also denied.

On April 13, 2015, a jury convicted Appellant of the above charges. On July 13, 2015, the trial court sentenced Appellant to a term of 20 to 40

---

[1] 18 Pa.C.S. § 2502(c) and § 2702(a)(1), respectively.

[2] 18 Pa.C.S. § 902(a).

years' incarceration for the Murder conviction[3] and a concurrent sentence of two to four years' incarceration for the Criminal Solicitation-Hindering Prosecution conviction. Appellant timely filed a Post-Sentence Motion on July 22, 2015, which the trial court denied on October 16, 2015. This timely appeal followed.

The trial court set forth the facts as elicited at trial as follows:

> Facts at trial showed that [Appellant] was angry with [the Victim] because [the Victim] was supposed to be selling drugs for [Appellant], but instead was diverting customers to other drug dealers. On June 25, 2012, [the Victim] appeared at a residence located at 1005 Victoria Avenue in New Kensington, PA. Present at that time were Lisa Schreckengost, Michelle Monfredi [ ,] and Takayla Witcher. At approximately 11:30 p.m., [Appellant], who had arrived somewhat earlier asked Ms. Schreckengost to get [the Victim], who was located in the back bedroom of the apartment. [The Victim] entered the front bedroom and was confronted by [Appellant]. Ms. Schreckengost heard thumping sounds and when she entered the room, observed [Appellant] kicking [the Victim] in the side and in his face. He was unconscious and gasping for air. The confrontation and beating lasted 7-10 minutes.
>
> Michelle Monfredi heard grunting and groaning indicative of someone being beaten. The altercation lasted 5-10 minutes. After [Appellant] left the home, she observed that [the Victim's] face was bloody, he was unconscious and groaning and "not in there."
>
> Takayla Witcher[ ], also present, heard [Appellant] accuse [the victim] of "backdooring" him and saw him strike [the Victim] in the face. The beating continued despite the fact that after the first punch [the Victim] fell to the floor. After the beating ceased, Ms. Witcher noted that [the

---

[3] The Assault conviction merged for the purposes of sentencing. N.T. Sentencing, 7/13/15, at 19.

Victim] did not move and was gasping for air. Despite efforts to revive him, he remained slumped on the floor. She noted his lip and head were bleeding and his body limp. No ambulance was called.

The following day, June 27, 2012, Raymond Nelson was contacted and asked to take [the Victim] to the hospital. He proceeded to the second floor of 1005 Victoria Avenue and observed [the Victim] lying under the window in the corner of the bedroom. [The Victim] had defecated and urinated on himself and was unconscious. Mr. Nelson rolled him onto a blanket, carried him to his car, and took him to the Emergency Room at Citizens Hospital. Medical personnel were told that [the Victim] was found at the bottom of a stairway.

Nurse Leighanne Saliba, and Emergency Room nurse at Citizens, testified that at 2:20 p.m. on June 27, 2012, she assisted in removing [the Victim] from a vehicle. He was unconscious, with bruising on both temporal areas of his face, had a small lip laceration and only responded to painful stimuli. She characterized his appearance as decerebrate, his arms extended and palms pointing outward, indicative of a brain injury. His condition was critical and Life Flight was summoned and transported him to Allegheny General Hospital.

[The Victim] underwent surgery on July 3, 2012 for herniated cervical disks and spinal cord trauma. An electroencephalogram revealed a severe cortical brain injury. Cheryl Edwards, [the Victim's] sister, testified that she visited her brother at Allegheny General Hospital and later at Forbes Nursing Facility until his death on November 9, 2012. Her brother never spoke and remained curled in a fetal position. He was fed from a feeding tube and breathed through a trachestomy tube.

Dr. Cyril Wecht performed an autopsy and determined that the immediate cause of death was pneumonia. The underlying cause of death was posttraumatic encephalopathy due to severe concussive forces.

[Appellant] was arrested. While incarcerated he wrote letters to his girlfriend, Noel Bridges, instructing her to

contact Takayla Witcher and Jason Jackson and to tell them that if questioned by police, they should "play dumb" and deny being present during the beating. A letter was also given to Janelle Houser during her transport to a magistrate's office on November 13, 2014. Ms. Houser was incarcerated with Michelle Monfredi. The letter, Exhibit 38, instructed Ms. Houser to find out what [Ms. Monfredi] intended to do. This letter was signed by [Appellant] and turned over to Detective Klein.

Testimony was also provided by Shane DelGrosso, an inmate in the Clearfield County Jail. Mr. DelGrosso stated that [Appellant] told him that he had beat someone up because he owed him money and guessed that he killed him.

In defense, [Appellant] presented the testimony of Sheth Houser who stated that he spent June 26-27, 2012, with Takayla Witcher.

Trial Ct. Op., 10/16/2015, at 1-4.

Appellant raises the following six issues on appeal:

1. The Court of Common Pleas abused its discretion in allowing into evidence letters purported to have been written by Appellant which could not properly be authenticated due to a lack of a known sample letter written by the Appellant, over the pre-trial objection of Appellant's counsel.

2. The Court of Common Pleas abused its discretion in denying Appellant a continuance in order to better assist counsel in preparing a defense, to allow counsel more time to contact witnesses, and to appoint an expert witness in order to determine the actual cause of the victim's death.

3. The Court of Common Pleas abused its discretion when it denied Appellant's request for an involuntary manslaughter jury instruction, which was appropriate given the facts and circumstances of the case.

4. The Court of Common Pleas erred in denying Appellant's Post-Sentence Motions based on the uniformly [c]aucasian

jury selected at trial, which was an unfair representation of Appellant's peers.

5. The Court of Common Pleas erred in denying Appellant's Post-Sentence Motions as the evidence presented at trial was not sufficient to convict the Appellant of the crimes charged.

6. The Court of Common Pleas erred in denying Appellant's Post-Sentence Motions as the jury verdict was against the weight of the evidence, such as to shock one's sense of justice.

Appellant's Brief at 2.

Appellant first challenges the trial court's denial of his Motion in *Limine* to preclude admission of the letters in support of the Commonwealth's Hindering Prosecution charge. Appellant avers that the letters, sent to Noel Bridges and Janelle Houser, were improperly authenticated because the Commonwealth did not have a "known" sample of Appellant's handwriting to which a comparison the letters could be made. Appellant's Brief at 7. Appellant claims that the Commonwealth offered no proof that the "known" samples—35 letters signed by Appellant containing his return address and seized by police from Appellant's girlfriend—were, in fact, written by Appellant. Therefore, Appellant claims the trial court erred in admitting letters into evidence.

We review a trial court's evidentiary rulings for an abuse of discretion. *Commonwealth v. Stokes*, 78 A.3d 644, 654 (Pa. Super. 2013). An abuse of discretion is not a mere error in judgment but, rather, involves bias, ill

will, partiality, prejudice, manifest unreasonableness, or misapplication of law. ***Commonwealth v. Riley***, 19 A.3d 1146, 1149 (Pa. Super. 2011).

The rules of evidence provide that the requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. Pa.R.E. 901. In ***In re F.P.***, this Court held:

> A document may be authenticated by direct proof and/or by circumstantial evidence. ***Commonwealth v. Brooks***, [ ] 508 A.2d 316, 318 (Pa. Super. 1986) (citations omitted). "'[P]roof of any circumstances which will support a finding that the writing is genuine will suffice to authenticate the writing.'" *Id.* at 319, quoting McCormick, Evidence § 222 (E. Cleary 2d Ed. 1972). "The courts of this Commonwealth have demonstrated the wide variety of types of circumstantial evidence that will enable a proponent to authenticate a writing." *Id.* (collecting cases).

***In re F.P.***, 878 A.2d 91, 94 (Pa. Super. 2005).

We agree with the trial court that there was sufficient proof of the authenticity of the letters such that their admission into evidence was proper. Noel Bridges, Appellant's girlfriend, testified that she exchanged correspondence with Appellant during his incarceration and that the police seized a stack of letters she had received from Appellant. N.T. Trial, 4/7/15-4/13/15, at 392-93. All of the seized letters contained Appellant's return address. N.T. at 320. One of the letters, Exhibit 37, instructed Ms. Bridges to contact Takayla Witcher through a third-party in order to instruct Ms.

Witcher to deny being present at and having knowledge of the assault on the Victim. N.T. at 394-96.

Janelle Houser testified that she received a letter, Exhibit 38, which was signed by Appellant. N.T. at 387. This letter asked Ms. Houser to find out what witness Michelle Monfredi was "going to do" and stated, "[i]f any of them telling hoes down there are around, you knock somebody's head off." N.T. at 485.

In addition, a document examiner and handwriting expert, Corporal Robert Negherbon, examined Exhibits 37 and 38. He confirmed, after comparing the exhibits with the other letters seized from Ms. Bridges, that the handwriting in Exhibits 37 and 38 was that of Appellant. N.T. at 369

In light of the direct and circumstantial evidence demonstrating the authenticity of Exhibits 37 and 38, we conclude the trial court did not abuse its discretion in admitting them into evidence. Accordingly, Appellant is not entitled to relief on this issue.

In his second issue, Appellant claims the trial court abused its discretion in denying Appellant's March 30, 2015 and April 7, 2015 Motions for Continuance. Appellant alleges that the trial court "fail[ed] to recognize the nature of the crimes at issue and the intricacy of the evidence." Appellant's Brief at 10. He claims that, "had the court allowed counsel more time to find an expert, the Appellant would have been better able to determine the cause of trauma, extent of injury, and cause of death. This

would have enabled the Appellant to more effectively cross examine Commonwealth witnesses on these matters and present evidence on his behalf." *Id.* at 11. Appellant avers that he was prejudiced by the trial court's rulings because they precluded him from being able to "actively determine causation as it related to his defense." *Id.*

We review an order denying a motion for continuance for an abuse of discretion. *Commonwealth v. Antidormi*, 84 A.3d 736, 745 (Pa. Super. 2014); *Commonwealth v. Hansley*, 24 A.3d 410, 418 (Pa. Super. 2013). "In reviewing a denial of a continuance, the appellate court must have regard for the orderly administration of justice, as well as the right of the defendant to have adequate time to prepare a defense." *Hansley*, 24 A.3d at 418.

The Commonwealth charged Appellant with Third Degree Murder and Aggravated Assault on October 24, 2013. On March 29, 2015, over 18 months later, Appellant provided counsel with a list of potential witnesses Appellant wanted counsel to contact on his behalf.[4] Counsel took no action in the case, but informed the court that he was ready for trial.

---

[4] Counsel notes that the court appointed him to represent Appellant in November 2014, but shortly thereafter he was hospitalized, and was unable to make any progress with the case until mid-January 2014. He claims that this fact, and Appellant's incarceration some distance from Westmoreland County, prevented him from meeting with Appellant to discuss the case details and trial strategy until the day before the pretrial conference.

On March 30, 2015, at Appellant's pretrial conference, counsel requested a continuance for the first time. The trial court denied the request, based in part on the Assistant District Attorney's opposition and his offer to assist Appellant in locating his potential witnesses.

At the commencement of trial on April 7, 2015, Appellant again requested a continuance, this time claiming that he needed time to explore the possibility of hiring a medical expert to testify about the Victim's cause of death. The Assistant District Attorney opposed this request. The trial court denied the Motion, and noted that Appellant had not re-raised his previous request for time to contact witnesses, ostensibly because he had interviewed them in the intervening week.

Although we are mindful of Appellant's right to adequately prepare his defense, after reviewing the record, we conclude that the trial court did not abuse its discretion in denying Appellant's Motions. Appellant was aware as early as October 2013 that he would need to prepare a defense to the Aggravated Assault and Murder charges, yet his counsel waited until trial had commenced to notify the trial court that he was considering hiring an expert witness to testify as to causation. The trial court's decision not to permit a continuance at this late date was not manifestly unreasonable in light of the facts and the trial court's interest in the orderly and timely administration of justice. **See Antidormi**, 84 A.3d at 745.

In his third issue on appeal, Appellant claims the trial court abused its discretion in denying his request for an involuntary manslaughter jury instruction.[5] Appellant's Brief at 13. He avers that the facts presented could support a finding of recklessness or gross negligence, and, thus, an involuntary manslaughter instruction was warranted. *Id.* at 15.

"In reviewing a challenge to the trial court's refusal to give a specific jury instruction, it is the function of this Court to determine whether the record supports the trial court's decision." ***Commonwealth v. Kendricks***, 30 A.3d 499, 507 (Pa. Super. 2011) (quotation and citation omitted). "[O]ur standard of review when considering the denial of jury instruction is one of deference—an appellate court will reverse a court's decision only when it abused its discretion or committed an error of law." ***Commonwealth v. Baker***, 24 A.3d 1006, 1022 (Pa. Super. 2011) (quotation and citation omitted). When evaluating a jury instruction, the charge must be read as a whole to determine whether it was fair or prejudicial. ***Id***.

---

[5] The Crimes Code defines involuntary manslaughter as follows:

**§ 2504. Involuntary manslaughter**

**(a) General rule.—**A person is guilty of involuntary manslaughter when as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner, he causes the death of another person.

18 Pa.C.S. § 2504(a).

Moreover, "a trial court should not instruct the jury on legal principles which have no application to the facts presented at trial. Rather, there must be some relationship between the evidence presented and the law upon which an instruction is requested." *Commonwealth v. Taylor*, 876 A.2d 916, 925 (Pa. 2005) (quotations and internal citation omitted. "Accordingly, a criminal defendant must establish that the trial evidence would 'reasonably support' a verdict based on the desired charge and may not claim entitlement to an instruction that has no basis in the evidence presented during trial." *Id* at 925-26.

"In determining whether the evidence would support a manslaughter charge, we must view the evidence in the light most favorable to the defendant." *Commonwealth v. Soltis*, 687 A.2d 1139, 1141 (Pa. Super. 1996).

In considering Appellant's request for an involuntary manslaughter charge, the trial court noted that it "found no evidence in the record to support a determination that the killing resulted from an accident or negligence." Trial Ct. Op., 10/16/15, at 10. It further opined:

> In this case, [Appellant] arranged to be present in order to confront [the Victim] about "backdooring" him. Almost immediately, he struck the unsuspecting victim in the face causing him to collapse. He beat him continuously for 5-10 minutes, striking and kicking him in the face and torso. Subsequent to this episode [the Victim] lost the ability to walk, eat or breathe independently, or speak, and remained curled up in a fetal position until his death. [Appellant] presented no evidence to show this conduct was accidental or grossly negligent. Thus, without making

- 12 -

> involuntary manslaughter an issue in the case, and because the beating was prolonged and brutal, the request for a charge of involuntary manslaughter was properly denied.

***Id.*** The record supports the trial court's decision. We agree with the trial court that an involuntary manslaughter jury charge was not appropriate in light of the evidence. Therefore, this issue lacks merit.

In his next issue, Appellant claims the trial court erred in denying his Post-Sentence Motion in which he alleged that his Sixth Amendment right to a jury of his peers was violated. ***See*** U.S. Const. amend. VI. Appellant notes that he is African-American and the jury panel from which he selected his jury was all white.[6]

To prevail on a claim of underrepresentation of certain groups in a jury pool, the complainant must show: "(1) the group allegedly excluded is a distinctive group in the community; (2) the representation of this group in venires from which juries are selected is not fair and reasonable in relation of the number of such people in the community; and (3) this underrepresentation is due to systematic exclusion of the group in the jury selection process. 'Systematic' means caused by or inherent in the system by which juries were selected. Proof is required of an actual discriminatory practice in the jury selection process, not merely underrepresentation of one particular group." ***Commonwealth v. Estes***, 851 A.2d 933, 935 (Pa.

---

[6] Appellant raised this issue during jury selection. ***See*** N.T. at 29.

Super. 2004) (quotations and citations omitted). "The mere showing of underrepresentation, absent an actual discriminatory practice in the jury selection process, causes [a defendant's] constitutional claim to fail." *Id.* at 936.

As stated by the trial court, "[i]n this case, other than objecting to the composition of the panel, [Appellant] made no showing that the panel was unfairly selected or that the underrepresentation of African Americans was due to a systemic exclusion of this group. It was incumbent upon [Appellant] to show discrimination in the use of the jury lists. His failure to provide this evidence is fatal to this claim." We agree with the trial court. Appellant is not entitled to relief on this claim.

Next, Appellant claims the Commonwealth's evidence was insufficient to convict him of Third Degree Murder. Appellant's Brief at 17. He avers that there was insufficient evidence to establish a causal connection between the beating and the Victim's death, and insufficient evidence to prove that Appellant acted with malice. *Id.*

Our standard of review of sufficiency claims is well-settled:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a

> defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Andrulewicz*, 911 A.2d 162, 165 (Pa. Super. 2006) (quotation and citation omitted).

Murder in the third-degree is defined as "all other kinds of murder" other than first-degree and second-degree murder. 18 Pa. C.S. § 2502(c). In *Commonwealth v. Seibert*, 622 A.2d 361, 364 (Pa. Super. 1993), the Court states "the elements of third-degree murder, as developed by case law, are a killing done with legal malice but without the specific intent to kill required in first-degree murder." "Malice express or implied is the criteria and absolutely the essential ingredient of murder." *Commonwealth v. Commander*, 260 A.2d 773, 776 (Pa. 1970). "Malice may be found to exist not only in an intentional killing, but also in an unintentional homicide, where the perpetrator 'consciously disregarded an unjustified and extremely high risk that his actions might cause death or serious bodily harm.'" *Commonwealth v. Young*, 431 A.2d 230, 232 (Pa. 1981).

Addressing Appellant's sufficiency challenges, trial court opined that the jury found that the Victim's "condition prior to the beating, and his

condition immediately thereafter was consistent with his injuries as established by the coroner and medical witnesses." Trial Ct. Op. at 11. Although Appellant claims that the Commonwealth's witnesses provided contradictory and inconsistent testimony, the trial court noted that, "the jury, making its own credibility determinations, decided which testimony to believe and which to reject." *Id.*

The Commonwealth's evidence established that Appellant arranged to to be present in order to confront the Victim about "backdooring" him. Almost immediately, Appellant struck the Victim in the face causing him to collapse. Appellant continued to beat the Victim for 5-10 minutes, striking and kicking him in the face and torso. We agree with the trial court that the Commonwealth presented sufficient evidence of malice, and a causal connection between the beating and the Victim's death, for the jury to find Appellant guilty of Third Degree Murder. Accordingly, this issue fails.

Last, Appellant claims the verdict was against the weight of the evidence. Appellant's Brief at 17. Specifically, Appellant claims that the testimony of the medical witnesses was inconsistent with the Victim's injuries.

We note that, when considering challenges to the weight of the evidence, "[]he weight of the evidence is exclusively for the finder of fact[,] who is free to believe all, none or some of the evidence and to determine the credibility of witnesses." *Commonwealth v. Talbert*, 129 A.3d 536, 545

(Pa. Super. 2015) (internal quotation marks and citations omitted). Further, "[i]n order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Id.* at 546 (internal quotation marks and citation omitted).

In the instant matter, the jury, as the fact-finder, made its own credibility determinations and decided which testimony to believe and which to reject. It "found that [the Victim's] condition prior to the beating, and his condition immediately thereafter was consistent with his injuries as established by the coroner and medical witnesses." Trial Ct. Op. at 11. We will not disturb the jury's findings as they do not "shock[] the conscience of the [C]ourt." *Talbert*, 129 A.3d at 546 (quotation and citation omitted).

For the foregoing reasons, we affirm Appellant's Judgment of Sentence.

Judgment of Sentence affirmed. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/10/2016

- 17 -