**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| JOHN M. SMALLWOOD | : | |
| Appellant | : | No. 1207 EDA 2018 |

Appeal from the PCRA Order April 19, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0006178-2012

BEFORE:   OTT, J., NICHOLS, J., and STRASSBURGER, J.*

MEMORANDUM BY NICHOLS, J.:                    **FILED JANUARY 17, 2019**

Appellant John M. Smallwood appeals from the order dismissing his first petition filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.   Appellant argues that the PCRA court erred in dismissing his ineffectiveness claims against trial counsel and appellate counsel without a hearing.  We affirm.

On March 28, 2012, Appellant was charged with first-degree murder and possession of an instrument of crime in connection with the killing of Shawn Andrews (the Victim).  The matter proceeded to a jury trial, where the details of the killing were established through Appellant's statement to police:

> We started out on Thursday at 2:00 in the morning getting high.  We had some girls over there.  He put the girls out and then he said he wanted to make another phone call to have some more drugs dropped off.  I told him I was tired

_____

* Retired Senior Judge assigned to the Superior Court.

and only had $4 left to my name and I had a lot on my mind. After that, the argument continued and he wanted to continue to get high and I didn't want to.

I got up and went to the bedroom and laid down. He walked around the kitchen and started slamming pots around. After that, I jumped up and we started to argue. He told me that I had to roll. I told him I wasn't going any place, that I just gave him $250, and I gave him $100 on Monday.

Then the argument started, then everything went boom. I might have pushed him out of the way because I was going back to the bedroom and then he pushed me. He picked up scissors and I picked up a knife. We started fighting. I stabbed him in the side of the jaw. I just wanted him to stop hollering. I knew if the neighbors came down and saw all the blood that it was a wrap.

He lost the scissors. And the knife that I had bent up, I lost the knife. I reached over and grabbed the iron. He was laying on his back. I got on top of him and I hit him with the iron until it broke. After that, he was just laying there breathing and bleeding out. After that, I didn't want to see him, so I ran and got a quilt and covered him up. I knew from watching TV that rigor mortis was going to settle in and I'm not that strong so I went ahead and dragged him into the closet.

I knew that once rigor mortis set in I couldn't move him and then I passed out on the bed. When I got up it was Friday. I collected my things, turned the thermostat up, took some of the bloody clothes and put them in a blue bag, then I went to 69th Street and dumped them there.

N.T., 7/24/2013, at 149-148.

The Commonwealth presented expert testimony from Marlon Osbourne, M.D., assistant medical examiner for the Philadelphia Medical Examiner's Office, who testified regarding the Victim's injuries. *Id.* at 113. Dr. Osbourne stated that the fatal stab wound was located on the left side of the Victim's neck. *Id.* at 127. The Victim also sustained several non-fatal stab wounds,

which were located on the right side of his neck, his chin, his left cheek, his upper back, and his lower back. *Id.* at 126-27. In addition, Dr. Osbourne indicated that the Victim had several lacerations consistent with blunt force trauma. *Id.* at 123. The Victim also had multiple abrasions on his hands which Dr. Osbourne described as "defensive wounds." *Id.* at 128.

Detective Francis Kane testified that he conducted Appellant's interview at the Homicide Division. *Id.* at 135. He stated that most of what Appellant said in his statement was corroborated at the scene. *Id.* at 167. However, the police were unable to recover the pair of scissors that the Victim allegedly picked up during the altercation. *Id.* Detective Kane also testified regarding photographs he took of Appellant's hand injuries on the day he gave his police statement. *Id.* at 164. Detective Kane stated that Appellant did not have any injuries on his right hand, but had several lacerations on his left hand. *Id.* at 165. Detective Kane opined that the left-hand lacerations were offensive wounds, likely because "[h]e had the knife in his hand, and as he was stabbing someone, it slipped." *Id.* at 165-66.

Appellant requested a jury instruction for voluntary manslaughter – heat of passion. *Id.* at 97. The Commonwealth argued that the instruction was unwarranted because nothing in the statement or the record demonstrated that there was "sudden and intense passion." *Id.* at 101. The trial court denied Appellant's request and instructed the jury on the elements of first-degree and third-degree murder.

Thereafter, Appellant was convicted of first-degree murder and sentenced to a mandatory term of life in prison without the possibility of parole. Appellant filed a direct appeal, and this Court affirmed Appellant's judgment of sentence on April 7, 2015. *See Commonwealth v. Smallwood*, 2231 EDA 2013 (filed April 7, 2015) (unpublished mem.).

Appellant's timely *pro se* PCRA petition, his first, was docketed by the PCRA court on April 15, 2017. The PCRA court appointed counsel who filed an amended petition on June 3, 2017. On March 19, 2018, the PCRA court issued a Pa.R.Crim.P. 907 notice of intent to dismiss Appellant's petition without a hearing. *See* Rule 907 Not., 3/19/18. The PCRA court dismissed Appellant's petition on April 19, 2018. That same day, Appellant filed a timely notice of appeal. Both Appellant and the PCRA court subsequently complied with Pa.R.A.P. 1925.

Appellant raises the following questions on appeal:

1. Did the PCRA court err in dismissing Appellant's PCRA [p]etition without a hearing because direct appeal counsel was ineffective for failing to raise the denial of Appellant's request for a [v]oluntary [m]anslaughter jury instruction on direct appeal?

2. Did the PCRA court err in dismissing Appellant's PCRA [p]etition without a hearing because trial counsel was ineffective for failing to file a post-sentence [m]otion as to the weight of the evidence for the [f]irst-[d]egree [m]urder conviction?

Appellant's Brief at 4.

Our standard of review from the dismissal of a PCRA petition "is limited to examining whether the PCRA court's determination is supported by the

- 4 -

evidence of record and whether it is free of legal error." ***Commonwealth v. Ousley***, 21 A.3d 1238, 1242 (Pa. Super. 2011) (citation omitted).

To establish a claim of ineffective assistance of counsel, a defendant "must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." ***Commonwealth v. Turetsky***, 925 A.2d 876, 880 (Pa. Super. 2007) (citation omitted).

The burden is on the defendant to prove all three of the following prongs: "(1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different." ***Id.*** (citation omitted); ***see also Commonwealth v. Daniels***, 963 A.2d 409, 419 (Pa. 2009) ("A failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness." (citation omitted)). "Counsel cannot be deemed ineffective for failing to pursue a meritless claim." ***Commonwealth v. Loner***, 836 A.2d 125, 132 (Pa. Super. 2003) (*en banc*).

Moreover, a PCRA petitioner is not automatically entitled to an evidentiary hearing on his petition. ***See Commonwealth v. Smith***, 121 A.3d 1049, 1052 (Pa. Super. 2015). "[T]he PCRA court can decline to hold a hearing if there is no genuine issue concerning any material fact and the petitioner is not entitled to postconviction collateral relief, and no purpose

would be served by any further proceedings." **Id.** On appeal, we "examine each of the issues raised in the PCRA petition in light of the record in order to determine whether the PCRA court erred in concluding that there were no genuine issues of material fact and in denying relief without an evidentiary hearing." **Id.** (citation omitted).

In his first issue, Appellant argues that direct appeal counsel was ineffective for failing to challenge the trial court's denial of his request for a voluntary manslaughter jury instruction. Appellant's Brief at 8. Appellant asserts that "although [he] killed [the Victim] with a knife and iron, [the Victim] was in possession of scissors and, therefore, Appellant acted under a sudden and intense passion resulting from serious provocation by [the Victim]." **Id.** He claims that the evidence established that Appellant and Victim "got into a serious and escalating domestic argument when drugs had been used and there was a dispute over money." **Id.** at 12. He also argues that "there was screaming and an escalation of physical violence . . . [Victim] picked up scissors first and then Appellant initially grabbed a knife and stabbed [Victim]." **Id.** He contends that, "[u]nder these circumstances, it was a jury question as to whether Appellant was acting under a sudden and intense passion resulting from serious provocation." **Id.** Appellant concludes that, based on his version of the facts, he was entitled to a voluntary manslaughter instruction and direct appeal counsel was ineffective for failing to raise the issue on appeal. **Id.**

When reviewing a challenge to jury instructions, this Court will "reverse a [trial] court's decision only when it abused its discretion or committed an error of law." *Commonwealth v. Baker*, 24 A.3d 1006, 1022 (Pa. Super. 2011) (citation omitted). When a trial court refuses to deliver a specific jury instruction, "it is the function of this Court to determine whether the record supports the trial court's decision." *Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1257 (Pa. Super. 2014) (*en banc*) (citation omitted). "[T]he relevant inquiry for this Court . . . is whether such charge was warranted by the evidence in the case." *Commonwealth v. Baker*, 963 A.2d 495, 506 (Pa. Super. 2008) (citation omitted).

Trial courts are not to instruct a jury on legal principles that are not applicable to the facts presented at trial because such instructions are likely to confuse jurors and place obstacles in the path of a just verdict. *See Commonwealth v. Taylor*, 876 A.2d 916, 925 (Pa. 2005). Therefore, a defendant must establish that the trial evidence would have reasonably supported a verdict based on the desired charge, and may not claim entitlement to an instruction that is not supported by the evidence presented at trial. *Id.* at 925-26.

Additionally, "[u]nder Pennsylvania law, a homicide defendant is entitled to a charge on involuntary or voluntary manslaughter only if the evidence adduced at trial would reasonably support a verdict on such a charge." *Commonwealth v. Soltis*, 687 A.2d 1139, 1141 (Pa. Super. 1996) (citations omitted). "In other words, a trial court can give a manslaughter instruction

only when there is evidence tending to show that the defendant is not guilty of the crime of murder but is guilty of the lesser crime of manslaughter." *Id.* (citation omitted). "In determining whether the evidence would support a manslaughter charge, we must view the evidence in the light most favorable to the defendant." *Id.* (citation omitted).

Our Supreme Court has stated that to determine "whether there was sufficient provocation to create uncontrollable passion in a reasonable person, we determine whether the killer actually acted in the heat of passion, whether the provocation lead directly to the slaying of the person responsible for the provocation, and whether the killer had sufficient cooling off time." *Commonwealth v. Martin*, 5 A.3d 177, 186 (Pa. 2010) (citing *Commonwealth v. McCusker*, 292 A.2d 286, 290 (Pa. 1972)). "If any element is missing, the provocation defense fails." *Martin*, 5 A.3d at 186 (citation omitted).

Our Supreme Court has also stated that

[r]elevant to the heat of passion claim, we note that a defendant charged with murder may establish that he is guilty, not of murder, but rather of voluntary manslaughter, by proving that, at the time of the killing, he was acting under a sudden and intense passion resulting from serious provocation by the victim. Emotions encompassed by the term passion include anger, rage, sudden resentment or terror which renders the mind incapable of reason.

Whether the provocation by the victim was sufficient to support a heat of passion defense is determined by an objective test: whether a reasonable man who was confronted with the provoking events would become impassioned to the extent that his mind was incapable of cool reflection. Significantly, we have clarified that both passion and provocation must be established, and that if

- 8 -

there be provocation without passion, or passion without a sufficient cause of provocation, or there be time to cool, and reason has resumed its sway, the killing will be murder.

***Commonwealth v. Busanet***, 54 A.3d 35, 55 (Pa. 2012) (citations and internal quotation marks omitted).

In dismissing Appellant's petition, the PCRA court concluded that the trial court did not abuse its discretion, as the evidence did not reasonably establish the elements required for a voluntary manslaughter defense. ***See*** PCRA Ct. Op., 5/30/18, at 9. We agree.

Instantly, Appellant's statement to police established that Appellant and the Victim were in an argument when the Victim picked up a pair of scissors. N.T., 7/24/13, at 148. At that point, Appellant picked up a knife, Appellant and the Victim fought, and Appellant stabbed the Victim in the side of the jaw. ***Id.*** at 149. Appellant stated that, at that moment, "I just wanted him to stop hollering. I knew if the neighbors came down and saw all the blood that it was a wrap." ***Id.*** Thereafter, Appellant stabbed the Victim multiple times until the knife bent. ***Id.*** At that point, Appellant grabbed a clothing iron, which he used to bludgeon the Victim until it broke. ***Id.*** As the Victim laid on the floor "breathing and bleeding out," Appellant covered him with a quilt and dragged him to the closet. ***Id.***

Given these facts, we agree with the PCRA court's conclusion that the evidence at trial did not reasonably support a voluntary manslaughter charge. ***See Soltis***, 687 A.2d at 1141. Even when viewed in the context of the alleged argument, the Victim's act of picking up scissors would not cause a reasonable

person to become impassioned to the point where he is incapable of cool reflection and compelled to commit murder. Moreover, the evidence did not establish that Appellant was under a sudden and intense passion that rendered him incapable of reason. *See Busanet*, 54 A.3d at 55. As indicated previously, Appellant's own statement reflected his reasoned thought process at the time of the killing. Therefore, the PCRA court correctly found that Appellant's underlying claim was meritless[1] and that direct appeal counsel was not ineffective for failing to raise the issue on appeal. *See Loner*, 836 A.2d at 132; *see also Daniels* 963 A.2d at 419.

In his second issue, Appellant argues that trial counsel was ineffective for failing to file a post-sentence motion preserving his weight of the evidence claim. Appellant's Brief at 13. Appellant contends that the "weight of the evidence does not support a conviction for first-degree [m]urder because the act was not premeditated or proven not to be impulsive." *Id.* at 16. Specifically, he argues that the evidence demonstrates that "Appellant and [the Victim] had been doing drugs, there was an escalating verbal and physical altercation, and [the Victim] picked up scissors during the altercation. Appellant then immediately picked up a knife and started stabbing [the

---

[1] To the extent that Appellant argues that the jury was entitled to determine whether or not the facts supported a voluntary manslaughter conviction, we disagree. As noted above, this Court has held that where evidence does not support a finding of manslaughter, the court is not required to submit the issue to the jury. *See Commonwealth v. Carr*, 580 A.2d 1362, 1365 (Pa. Super. 1990).

Victim]." **Id.** at 16. Appellant contends that he was prejudiced by counsel's failure to challenge the weight of the evidence "because his conviction is extremely questionable given the domestic history, mutual antagonism, drug consumption, apparent impulsiveness, and so forth." **Id.** at 17.

"One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice." **Commonwealth v. Clay**, 64 A.3d 1049, 1055 (Pa. 2013) (citation omitted). "A true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." **Commonwealth v. Charlton**, 902 A.2d 554, 561 (Pa. Super. 2006) (citation omitted). Weight of the evidence claims "[are] addressed to the discretion of the trial court." **Commonwealth v. Galvin**, 985 A.2d 783, 793 (Pa. 2009) (citation omitted).

Our Supreme Court has explained that

[t]he weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the . . . verdict if it is so contrary to the evidence as to shock one's sense of justice.

**Commonwealth v. Small**, 741 A.2d 666, 672 (Pa. 1999) (citation omitted).

Moreover, "where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence." **Commonwealth v.**

- 11 -

*Champney*, 832 A.2d 403, 408 (Pa. 2003). Instead, "appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim." *Id.*

Appellant correctly asserts that counsel failed to preserve his weight claim for appellate review.[2] However, as noted by the PCRA court, the trial court addressed the merits of the issue in its 1925(a) opinion and concluded that the verdict did not "shock the conscience." *See* Trial Ct. Op., 12/20/13, at 9.

Based on our review of the record, we agree with the PCRA court that Appellant's underlying weight of the evidence claim was meritless. The jury, as fact finder, was free to believe all, part, or none of the evidence presented at trial. *Small*, 741 A.2d at 672. The jury concluded that the portion of Appellant's statement relating to drug use and his argument with the Victim were outweighed by the Commonwealth's evidence that Appellant acted with intent when he killed the Victim. The trial court appropriately considered Appellant's weight of the evidence challenge, and we find no abuse of discretion in the trial court's assessment. *See Champney*, 832 A.2d at 408. Accordingly, because Appellant's underlying claim lacked merit, counsel was not ineffective for failing to preserve it. *See Loner*, 836 A.2d at 132; *see also Daniels*, 963 A.2d at 419.

_____

[2] On direct appeal, this Court concluded that Appellant waived his challenge to the weight of the evidence due to counsel's failure to preserve the issue in a post-sentence motion. *See Smallwood*, 2231 EDA 2013.

Finally, given our disposition of Appellant's ineffectiveness claims, we conclude that the PCRA court did not err in declining to hold an evidentiary hearing. **See Smith**, 121 A.3d at 1052.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/17/19