687 A.2d 1139

**COMMONWEALTH of Pennsylvania**

v.

**Justin John SOLTIS, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 2, 1996.

Filed Dec. 23, 1996.

220

M. Scot Curran, Washington, for appellant.

Paul M. Petro, Assistant District Attorney, Donora, for the Commonwealth, appellee.

Before KELLY, JOHNSON and OLSZEWSKI, JJ.

JOHNSON, Judge:

Justin John Soltis appeals from the judgment of sentence imposed following his conviction for third-degree murder and theft by unlawful taking or disposition. We affirm.

During the early morning of May 27, 1994, 15–year–old Justin Soltis summoned the state police to his grandfather's home in Washington County. Soltis, who lived with his grandfather, Michael Soltis, claimed that intruders had broken into the home, beaten and killed his 78–year–old grandfather and also inflicted physical injuries upon Soltis. The police arrived at the home and found the grandfather dead, lying in a pool of blood at the bottom of a staircase.

After questioning Soltis for several hours, the police became suspicious because of inconsistencies in his story. Soltis became a suspect and eventually he gave the following confession:

> I was there alone with him and I just wanted to take his guns and bullets and kill some one [sic]. We were at the top of the stairs and I pushed him down the steps. After he got to the bottom of the steps I hit him around the head.... I just wanted to make sure that he was dead.... I then called myfriend [sic] Nick Louk and told him about everything and I wanted him to come and help me. I told my friend that I was going to do it a couple of weeks before.

Brief of Appellant at 7.

Soltis admitted that he and Louk engaged in a scheme to cover up Soltis's involvement in the killing: Soltis fabricated the story about intruders breaking into the home. At Soltis's request, Louk punched his face to create the appearance that Soltis had been involved in an altercation. Soltis also took his grandfather's car and guns, in order to create the appearance that a robbery had occurred.

After he confessed, Soltis was charged with criminal homicide, conspiracy to commit homicide and theft by unlawful taking or disposition. The trial court denied his petition to transfer the case to juvenile court. At the close of the prosecution's case, the trial court dismissed the conspiracy charge. At the close of his trial, Soltis was convicted of third-degree murder and the theft of the car and guns. This appeal followed.

On appeal, Soltis raises several arguments, all relating to his murder conviction. Soltis first argues that the trial court erred by failing to instruct the jury on the offenses of involuntary and voluntary manslaughter. Under Pennsylvania law, a homicide defendant is entitled to a charge on involuntary or voluntary manslaughter only if the evidence adduced at trial would reasonably support a verdict on such a charge. *Commonwealth v. Browdie*, 543 Pa. 337, 671 A.2d 668 (1996) (applying this rule to heat-of-passion voluntary manslaughter); *Commonwealth v. Carter*, 502 Pa. 433, 466 A.2d 1328 (1983) (applying this rule to unreasonable belief voluntary manslaughter); *Commonwealth v. White*, 490 Pa. 179, 415 A.2d 399 (1980) (applying this rule to involuntary manslaughter). In other words, a trial court can give a manslaughter instruction only when there is evidence tending to show that the defendant is not guilty of the crime of murder but is guilty of the lesser crime of manslaughter. *See White, supra,* at 183–84, 415 A.2d at 401. In determining whether the evidence would support a manslaughter charge, we must view the evidence in the light most favorable to the defendant. *Commonwealth v. McCloskey*, 441 Pa.Super. 116, 121–22 n. 1, 656 A.2d 1369, 1372 n. 1 *appeal disallowed*, 542 Pa. 662, 668 A.2d 1126 (1995).

To be entitled to an involuntary manslaughter charge, Soltis must point to some evidence that tends to show that he acted recklessly or with gross negligence in causing his grandfather's death. 18 Pa.C.S. § 2504(a) (mental state required for involuntary manslaughter is either recklessness or gross negligence). Absent some evidence in the record showing that

the grandfather's death was an accident caused by Soltis's extreme carelessness, he is not entitled to an involuntary manslaughter instruction.

■ Soltis argues that the testimony of his expert witness, psychologist Michael Moran, tends to support an instruction for involuntary manslaughter. Specifically, Moran testified that, in his expert opinion, Soltis acted without either malice or the intent to kill his grandfather. N.T., November 14–19, 1994, at 237–38. While this evidence tends to negate the mens rea element of the crime of murder, Moran's testimony does not tend to show that Soltis acted recklessly or with gross negligence and thus does not support an involuntary manslaughter charge. 18 Pa.C.S. § 2504(a); *Commonwealth v. Long*, 397 Pa.Super. 140, 146, 579 A.2d 970, 973–74 (1990).

■ Soltis also argues that the testimony of forensic pathologist Dr. Abdulrezak Shakir supports an involuntary manslaughter charge because Shakir testified that the blunt force trauma injuries on the grandfather's face were consistent with blows struck by a fist. N.T., *supra*, at 65. Soltis claims that because malice is only one permissible inference when fists are used in an assault, *Commonwealth v. Rementer*, 410 Pa.Super. 9, 27, 598 A.2d 1300, 1309 (1991), this testimony supports an involuntary manslaughter charge. This argument is entirely without merit. Even if we accepted Soltis's premise that Shakir's testimony tended to negate the inference that Soltis acted with malice, this evidence does not tend to establish that he acted with recklessness or gross negligence. 18 Pa.C.S. § 2504(a). Thus, this evidence—even when viewed in the light most favorable to Soltis—does not establish that he was entitled to an involuntary manslaughter charge.

Soltis next argues that he was entitled to a charge of voluntary manslaughter. Under Pennsylvania law, two different mental states can support a charge of voluntary manslaughter. A person is guilty of "heat of passion" voluntary manslaughter if he acts "under a sudden and intense passion resulting from serious provocation by ... the individual killed." 18 Pa.C.S. § 2503(a)(1). A person is guilty of "unrea-

sonable belief" voluntary manslaughter if he intentionally kills another while acting under the unreasonable belief that he is in danger of serious bodily harm. *See* 18 Pa.C.S. § 2503(b).

Soltis again points to Moran's testimony regarding his belief that Soltis acted without malice or intent. As we discussed above, this evidence tends to negate the mens rea element for murder, but does not establish the elements of voluntary manslaughter. 18 Pa.C.S. § 2503. Soltis has not pointed to any evidence tending to show provocation on the part of his grandfather that led Soltis to kill him. Nor has Soltis shown us evidence tending to establish that he acted with an unreasonable belief that his grandfather was going to inflict upon him serious bodily harm. *See Browdie, supra,* at 349–50, 671 A.2d at 674; *accord White, supra,* at 183–84, 415 A.2d at 401. Because Soltis has shown us no evidence that would support a conviction for either "unreasonable belief" or "heat of passion" voluntary manslaughter, we conclude that he was not entitled to a voluntary manslaughter instruction.

Next, Soltis argues that the trial court erred by denying his petition to transfer this case to juvenile court. Under Pennsylvania law, a juvenile murder defendant does not have an automatic right to have his case tried in juvenile court. 42 Pa.C.S. § 6322; *Commonwealth v. Austin,* 444 Pa.Super. 601, 603–04, 664 A.2d 597, 599 (1995), *appeal disallowed,* 544 Pa. 622, 675 A.2d 1241 (1996). Rather, according to the statute that was in effect at the time of the grandfather's death, the defendant requesting the transfer was required to prove to the trial court that he was amenable to rehabilitation as a juvenile, based upon the following factors: age; mental capacity; maturity; the degree of criminal sophistication exhibited by the defendant; the defendant's previous involvement with the juvenile system, including the success or failure of any previous attempts by the juvenile court to rehabilitate the defendant; whether the defendant can be rehabilitated prior to the expiration of the juvenile court jurisdiction; the nature and circumstances of the act for which the transfer is sought; and any other relevant factors. 42 Pa.C.S. § 6355(a)(4)(iii)(A);

*see Commonwealth v. Morningwake,* 407 Pa.Super. 129, 135, 595 A.2d 158, 161 (1991) (juvenile murder defendant bears burden of proving that case should be transferred to juvenile system).

In reviewing a trial court's denial of a defendant's petition to transfer to juvenile court, an appellate court does not determine whether the trial court's decision was right or wrong. Rather, this decision is within the broad discretion of the trial judge and we will only reverse if we find a gross abuse of that discretion. *Commonwealth v. Reed,* 435 Pa.Super. 304, 315, 645 A.2d 872, 877 (1994), *appeal disallowed,* 540 Pa. 630, 658 A.2d 794 (1995); *Morningwake, supra,* at 135, 595 A.2d at 161. An abuse of discretion occurs only when the trial court exercises " 'manifestly unreasonable judgment based upon partiality, prejudice or ill will.' " *Commonwealth v. Potts,* 449 Pa.Super. 306, 311–12, 673 A.2d 956, 959 (1996), quoting *Commonwealth v. Cessna,* 371 Pa.Super. 89, 99, 537 A.2d 834, 839 (1988).

We conclude that the trial court did not abuse its discretion by denying Soltis's petition for transfer. The court considered the factors enumerated in the statute. Trial Court Opinion, dated October 11, 1994. Based upon the evidence presented at the decertification hearing, the court concluded that Soltis was not amenable to rehabilitation. *Id.* at 8. Because the court considered and applied the statutory factors to the evidence introduced at the hearing and did not base its decision upon partiality, prejudice or ill will, we conclude that the court did not abuse its discretion by denying Soltis's petition.

Soltis next argues that the trial court erred by denying his request for individual *voir dire* of prospective jurors. Rule 1106(E) of the Pennsylvania Rules of Criminal Procedure provides that "[i]n capital cases, the individual *voir dire* method must be used." A "capital case" is defined by the Rules of Criminal Procedure as "one . . . for which the death penalty may be imposed." Pa.R.Crim.P. 3. Soltis argues that because he was charged with first-degree murder and first-degree

murder is a crime for which the death penalty may be imposed, he was entitled to individual *voir dire*. The crux of Soltis's argument, therefore, is that "capital case" is synonymous with first-degree murder. We disagree.

In *Commonwealth v. Truesdale*, 449 Pa. 325, 296 A.2d 829 (1972), the supreme court stated that " 'capital offense' is a definition of a penalty ... rather than a definition of the crime of murder in the first degree." *Id.* at 331, 296 A.2d at 832. The drafters of Rule 1106, however, were careful to use the term "capital case" and not first-degree murder, in describing the type of case in which a defendant is entitled to individual *voir dire*. The question, therefore, is how one distinguishes a first-degree murder case from a capital case. The principle that we glean from the relevant authority is that a first-degree murder prosecution is a capital case unless the Commonwealth rules out seeking the death penalty.

For example, in *Commonwealth v. Walker*, 275 Pa.Super. 311, 316, 418 A.2d 737, 740 (1980), this Court upheld a trial judge's decision to deny individual *voir dire* to a first-degree murder defendant, in part, because the Commonwealth chose not to seek the death penalty. In *Commonwealth ex rel. Fitzpatrick v. Bullock*, 471 Pa. 292, 370 A.2d 309 (1977), the supreme court held that a trial court could not prevent individual *voir dire* over the Commonwealth's objection in a first-degree murder trial in which the Commonwealth had not ruled out seeking the death penalty. *Id.* at 297–98, 370 A.2d at 312. In both of these first-degree murder prosecutions, whether the case was a "capital case"—and whether the defendant was thus entitled to individual *voir dire*—depended upon whether the Commonwealth retained the option of seeking the death penalty.

In this case, the Commonwealth stated prior to jury selection that it was not seeking the death penalty. N.T., *supra*, at 3. Because the Commonwealth chose not to seek the death penalty, this case was not a capital one and Soltis was not entitled to individual *voir dire*.

Soltis also argues that he was entitled to 20 peremptory challenges, pursuant to Rule 1126, which provides for that number of peremptory challenges "[i]n trials involving a capital felony." Pa.R.Crim.P. 1126. Again, because the Commonwealth ruled out seeking the death penalty prior to trial, this case was not a capital one. Thus, Soltis was entitled to only 7 peremptory challenges. *Id.*

Judgment of Sentence **AFFIRMED.**

OLSZEWSKI, J., concurs in the result.