J-S10025-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AUSTIN KAMAL STEVENS | : | |
| | : | |
| Appellant | : | No. 920 EDA 2022 |

Appeal from the Judgment of Sentence Entered March 4, 2022
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0006170-2020

BEFORE:  PANELLA, P.J., LAZARUS, J., and STABILE, J.

MEMORANDUM BY LAZARUS, J.:                **FILED MAY 9, 2023**

Austin Kamal Stevens appeals from the judgment of sentence, entered in the Court of Common Pleas of Montgomery County, after a jury convicted him of first-degree murder,[1] involuntary deviate sexual intercourse (IDSI) – forcible compulsion,[2] IDSI with a child less than 13 years old,[3] and endangering the welfare of a child (EWOC).[4]  After review, we affirm.

On October 3, 2020, Officer Eric Honick of the Lower Providence Township Police Department received a call to respond to 3454 Germantown Pike in Lower Providence, Montgomery County, for an unresponsive ten-

_____

[1] 18 Pa.C.S.A. § 2502(a).

[2] *Id.* at § 3123(a)(1).

[3] *Id.* at § 3123(c).

[4] *Id.* at § 4304.

month-old. N.T. Jury Trial, 2/28/22, at 48-49. When Officer Honick and Officer Hyles Long arrived at the scene, the victim, Z.S., Stevens' daughter, was lying on the bed unresponsive in a diaper, and her skin was the color of a "pale-ish gray." *Id.* at 51-54. Officer Honick testified that he took Z.S. off of the bed, placed her on the floor, and began performing CPR. *Id.* at 54. Officer Honick described Stevens' demeanor as calm, "if not emotionless." *Id.* Soon after, paramedics arrived at the scene and began treating Z.S. Stevens told the officer that he had been giving Z.S. a bath, stepped out of the bathroom to make a drink, and then heard a thud. *Id.* at 57. Stevens further told officers that he believed that Z.S. fell and hit her head in the bathtub. *Id.* According to Stevens, after Z.S. fell, he took her out of the bathtub, brought her to the bedroom, dried her off, and attempted to comfort her. *Id.* Stevens relayed to the officer that Z.S. stopped responding, lost consciousness, and then he immediately called the police. *Id.*

After speaking with Stevens, Officer Honick notified the officer-in-charge and told him that he believed a detective needed to respond to the matter. *Id.* Thereafter, Detective Scott Dreibelbis of the Lower Providence Police Department was notified that Z.S. was in cardiac arrest and currently being transported to Einstein Medical Center. *Id.* at 60-61. While in the hospital's emergency room, Detective Dreibelbis encountered Stevens, whom he testified had a very calm demeanor. *Id.* at 62. Detective Dreibelbis then spoke with Stevens, and Stevens relayed to the detective that he gave Z.S. a bath, left the bathroom for a moment, heard a thud, and, when he came back,

Z.S. was slouching to one side and crying. *Id.* at 63. Stevens told the detective that when he found Z.S., he picked her up, carried her into the bedroom and dried her off, but that she became unresponsive. *Id.* at 63-64. While the two were speaking, Dr. Joseph Robinson, an attending physician, pronounced Z.S. dead at 12:12 a.m. *Id.* at 64. Detective Dreibelbis testified that when Stevens learned of his daughter's death, he just sighed. *Id.* at 65. The detective then asked Stevens if he would accompany him back to the police department. Stevens voluntarily agreed to go to the police department with Detective Dreibelbis and remained very calm during transport. *Id.* at 65, 69.

While at the police department, Detective Michael Crescitelli of the Montgomery County Detective Bureau, Homicide Unit, took a voluntary statement from Stevens. N.T. Jury Trial, 3/1/22, at 40. Detective Crescitelli and Detective Dreibelbis spoke with Stevens for a total of three hours and thirteen minutes. *Id.* at 46. The interview took place in two parts. *Id.* During the first part, Stevens consented to a search of his cell phone and gave his account of what happened to Z.S., explaining that she had fallen in the bathtub. *Id.* at 47.

By the end of the first part of the interview, another detective had gone through Stevens' phone and reviewed his search history. *Id.* at 50. The phone showed that at 9:27 p.m., Stevens googled "what if your baby stops breathing," and that at 10:22 p.m. he googled, "how do you know if your baby is dead?" *Id.* at 60, 64. However, Stevens did not call the police until 10:41

- 3 -

p.m. *Id.* at 50. When confronted with this information during the second part of the interview, Stevens explained that he was Googling information and trying to revive Z.S. during this time. *See* Exhibit C-44, at 2-8. The Commonwealth filed a criminal complaint against Stevens on October 4, 2020, and Stevens was arraigned that same day.[5]

At trial, the Commonwealth introduced testimony from four expert witnesses. The first consisted of the prerecorded testimony of the Montgomery County Coroner, Fredric Neil Hellman, M.D., M.B.A. N.T. Preservation of Testimony of Frederic Neil Hellman, M.D., M.B.A., 1/25/22, at 11. Doctor Hellman performed a post-mortem examination of Z.S. at the Montgomery County Coroner's Office. *Id.* at 13. He described Z.S. as 29 inches long, slightly over 17 pounds, and that she appeared to be a well-cared-for child. *Id.* at 14-15.

Doctor Hellman testified that he noticed a trickle of blood arising from the anal region, and clotted blood lining the inner parts of the glutea, the inner part of the buttocks. *Id.* Doctor Hellman's examination also revealed anorectal trauma, a sign of sexual assault. *Id.* As he investigated further, Dr. Hellman discovered large areas of hemorrhaged lining of the inner lining of Z.S.'s large intestine. *Id.* Doctor Hellman testified that these injuries were the result of non-accidental, blunt-force penetrating trauma. *Id.* at 17.

---

[5] In this initial criminal complaint, Stevens was charged with aggravated assault. However, on November 30, 2020, a second criminal complaint was filed that charged Stevens with first-degree murder and related offenses.

Additionally, he discussed his post-mortem findings regarding Z.S.'s head injuries. *Id.* at 24. He concluded that she suffered blunt-force scalp injuries to the back portion of her head, and specifically stated that these head injuries are not consistent with a short fall in a bathtub. *Id.* at 35.

Doctor Robinson, who had pronounced Z.S.'s death, testified that when Z.S. presented at the ER, she was unresponsive, cold to the touch, and had no heartbeat or cardiac electrical activity (a condition called asystole). N.T. Jury Trial, 3/1/22, at 5-8. Doctor Robinson further testified that when Z.S.'s diaper was removed, there was blood in the diaper. *Id.* at 8.

The Commonwealth's next expert, Lyndsey Emery, M.D., qualified as an expert in neuropathology, performed an examination on Z.S.'s brain, spinal cord, and eyes. *Id.* at 15-16, 19. Doctor Emery testified that Z.S. had injuries to all three of these body parts, with the most prominent being the injuries to the brain and eyes. *Id.* at 20. Doctor Emery concluded that these were non-accidental blunt impact injuries. *Id.* at 20-21.

Lastly, the Commonwealth presented Stephanie Deutsch, M.D., an expert in general pediatrics and pediatric child abuse. *Id.* at 80. Doctor Deutsch testified that the injuries related to Z.S.'s anorectal trauma raised a significant concern for penetrative trauma from sexual abuse. *Id.* at 151. She also testified that Z.S.'s head injuries were a clear case of abusive head trauma. *Id.* at 159.

In his defense, Stevens presented the testimony of Scott Krugman, M.D., an expert qualified in the field of child abuse and general pediatrics. *Id.*

at 186-87, 189. Doctor Krugman stated that Z.S. was a victim of abusive head trauma, that her injuries were severe, dramatic, and that they were the immediate cause of her death. *Id.* at 190-91. He also testified that there were findings of anal trauma, but stated that he could not be certain with regard to the cause of that trauma. *Id.* at 191. However, the doctor did say that the trauma was forced. *Id.* While Dr. Krugman opined that he did not believe Z.S. had been sexually abused, he acknowledged that Z.S.'s head injuries were the result of abuse and not from a fall in the bathtub. *Id.* at 196.

On March 3, 2022, Stevens was found guilty by a jury of the above-mentioned offenses and was sentenced to life imprisonment without the possibility of parole.[6] On March 4, 2022, the trial court entered an amended sentencing order, adding two consecutive three-year periods of probation on the counts of IDSI - forcible compulsion and IDSI with a child.

Stevens filed a timely notice of appeal, followed by a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Stevens raises the following claims for our review:

> (1) Whether the [trial] [c]ourt erred by not [giving an involuntary manslaughter jury charge] permitting the [d]efense to have the charge of involuntary manslaughter added as a lesser included offense.

---

[6] Stevens was also sentenced concurrently to 5 to 10 years for IDSI – forcible compulsion; 10 to 20 years for IDSI with a child; and 2 to 4 years for EWOC. N.T. Jury Trial, 3/3/22, at 87.

(2)    Whether the [trial] [c]ourt erred by giving a jury instruction about the question of sole and exclusive custody of the victim during the time of the injuries.

(3)    Whether the evidence was insufficient to sustain the conviction [] of first and second-degree murder, viewing the evidence in the light most favorable to the Commonwealth, [where] the prosecution failed to prove guilt beyond a reasonable doubt.

Brief of Appellant, at 4 (reworded for clarity).

Stevens first claims that the trial court erred by denying his request for a jury instruction on involuntary manslaughter where he maintains that he left Z.S. alone in the bathroom where she fell and hit her head in the bathtub.

At trial, defense counsel requested an involuntary manslaughter instruction. The trial court held argument on the request, at which defense counsel advanced the argument noted above. The Commonwealth responded by presenting various experts that showed Z.S. suffered non-accidental injuries to her head that were the result of abuse, and not from an accidental fall. The trial court ultimately denied the request for this jury instruction, concluding that the evidence did not support the charge. *See* N.T. Jury Trial, 3/2/22, at 11.

When reviewing a challenge to jury instructions we are governed by the following principles:

We review a challenge to a jury instruction for an abuse of discretion or an error of law. We must consider the charge as a whole, rather than isolated fragments. We examine the entire instruction against the background of all evidence presented, to determine whether error was committed. A jury charge is

erroneous if the charge as a whole is inadequate, unclear, or has a tendency to mislead or confuse the jury rather than clarify a material issue. Therefore, a charge will be found adequate unless the issues are not made clear to the jury or the jury was palpably misled by what the trial judge said. Furthermore, our trial courts are invested with broad discretion in crafting instructions, and such instructions will be upheld so long as they clearly and accurately present the law to the jury for its consideration.

*Commonwealth v. Rush*, 162 A.3d 530, 540 (Pa. Super. 2017) (internal citations omitted). Additionally, the trial court is not required to give every charge that is requested by the parties and its refusal to give a requested instruction does not require reversal unless the defendant was prejudiced by that refusal. *Commonwealth v. Scott*, 73 A.3d 599, 602 (Pa. Super. 2013). A criminal defendant must, therefore, "establish that the trial evidence would 'reasonably support' a verdict based on the desired charge and may not claim entitlement to an instruction that has no basis in the evidence presented during trial." *Commonwealth v. Hairston*, 84 A.3d 657, 668 (Pa. 2014).

"A person is guilty of involuntary manslaughter when[,] as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner, he causes the death of another person." 18 Pa.C.S.A. § 2504(a). Under Pennsylvania law, a homicide defendant is entitled to a charge of involuntary manslaughter only if the evidence adduced at trial would reasonably support a verdict on such a charge. *Commonwealth v. Soltis*, 687 A.2d 1139, 1141 (Pa. Super. 1996). "In other words, a trial court can give a manslaughter instruction only

when there is evidence tending to show that the defendant is not guilty of the crime of murder[,] but is guilty of the lesser crime manslaughter." ***Id.***

Instantly, all four of the Commonwealth's experts concluded that the injuries Z.S. suffered were a result of intentional trauma inflicted to her head as a result of abuse, not from an accidental fall. Even Stevens' own expert, Dr. Krugman, acknowledged that Z.S.'s head injuries were the result of abuse and not from a fall in a bathtub. Doctor Krugman also testified that this abusive head trauma and injuries were the immediate cause of Z.S.'s death. Accordingly, there is no evidence of record that could reasonably support a verdict of involuntary manslaughter. Therefore, the trial court properly declined Stevens' request for a jury instruction for involuntary manslaughter. ***Hairston***, ***supra***.

In his next claim, Stevens argues that the trial court erred by giving a jury instruction about the question of sole and exclusive custody of the victim during the time she sustained her injuries. At trial, defense counsel objected to the Commonwealth's request for the instruction. ***See*** N.T. Jury Trial, 3/1/22, at 11. The trial court overruled the objection, stating that it would provide the instruction, but tailor it so it was a permissive inference, not a mandatory inference. ***Id.***; ***see also*** Trial Court Opinion, 9/23/22, at 28. The instruction given to the jury read as follows:

> Now, if you find that the defendant had sole physical custody of Z.S. during the relevant time period, and that Z.S. sustained injuries which may have been caused by criminal conduct[,] and were not self-inflicted[]or accidental injuries[,] then you may, if

you choose, examine any explanation that was offered. And if you find it wanton, you may[,] if you choose, reject it[] and conclude beyond a reasonable doubt that the defendant was responsible for the infliction of the injuries to Z.S.

N.T. Jury Trial, 3/3/22, at 64-65.

Preliminarily, we observe that Stevens raises, for the first time on appeal, the claim that specific language in the sole-and-exclusive-custody instruction was ambiguous and confused the jury. Based upon our review of the record, Stevens has not raised this specific argument prior to appeal. Rather, this claim appears for the first time in his appellate brief. *See* Pa.R.A.P. 302(a) (issues not raised before trial court waived on appeal). Stevens also failed to include this claim in his Rule 1925(b) statement. *See* Pa.R.A.P. 1925(b)(4)(vii) (issues not included in Rule 1925(b) statement waived on appeal). Finally, this claim also is not fairly suggested in his statement of questions involved. *See* Pa.R.A.P. 2116(a). Thus, we conclude that this claim is waived for our review.

Stevens next challenges the sufficiency of the evidence supporting his conviction for first-degree murder.[7] In this case, Stevens' Rule 1925(b) statement simply declares, in boilerplate fashion, that the evidence was insufficient to support his first-degree murder conviction. Stevens' statement fails to specify which element or elements were not proven to support his

---

[7] In his Rule 1925(b) statement, Stevens also challenges the sufficiency of the evidence with respect to a second-degree murder charge. However, Stevens was not convicted of that charge.

- 10 -

conviction for first-degree murder and is coupled with a single sentence to support his argument in his appellate brief. Specifically, Stevens contends that the evidence shows that he "did not have a reason to wish the death of his daughter." Brief for Appellant, at 10. However, first-degree murder does not require proof that a defendant had a reason to wish the death of the victim. Instead, first-degree murder requires the Commonwealth to prove that (1) a human being was unlawfully killed; (2) the person accused is responsible for the killing; and (3) the accused acted with specific intent to kill. *Commonwealth v. Taylor*, 876 A.2d 916, 922 (Pa. 2005). The period of reflection required for premeditation to establish the specific intent to kill may be very brief; in fact, the design to kill can be formulated in a fraction of a second. *Commonwealth v. Rivera*, 983 A.2d 1211, 1220 (Pa. 2009). Premeditation and deliberation exist whenever the assailant possesses the conscious purpose to bring about death. *Id.*

The trial court interpreted Stevens' sufficiency challenge as one contesting the element of causation (i.e., Commonwealth did not prove that Stevens' failure to timely call 9-1-1 led to Z.A.'s death) or one challenging whether Stevens acted with specific intent.[8] The Commonwealth responded

---

[8] While the trial court addressed the issue in its Rule 1925(a) opinion, this is "of no moment to our analysis because we apply [Rule] 1925(b) in a predictable, uniform fashion, not in [a] selective manner dependent on an appellee's argument or a trial court's choice to address an unpreserved claim." *Commonwealth v. Tyack,* 128 A.3d 254, 260 (Pa. Super. 2015). Thus, we
*(Footnote Continued Next Page)*

to Stevens' argument by asserting that the delay in calling the police was not necessary to prove the cause of death; rather, it is evidence of Stevens' intent. The trial court denied Stevens' motion for a judgment of acquittal and agreed with the Commonwealth that the delay in calling 9-1-1 was relevant to the question of Stevens' intent. Based on the fact that the trial court had to guess which element(s) Stevens is challenging in his sufficiency claim on appeal, we find his issue waived. *See Commonwealth v. Dowling*, 778 A.2d 683, 686 (Pa. Super. 2001) (citation omitted) ("When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review.")

However, even if we did not find that Stevens had not waived this issue on appeal, he would not be entitled to relief. The evidence presented at trial was more than sufficient to sustain his conviction for first-degree murder. All four experts, presented by both the Commonwealth and the defense, agreed that Z.S.'s head injuries were the result of intentional abusive trauma that caused her death. Contrary to defense counsel's argument, Stevens' delay in calling 9-1-1 was not required to prove first-degree murder. Instead, it was evidence of Stevens' intent. Therefore, we conclude that the evidence was sufficient to allow the jury to find Stevens guilty of first-degree murder. Accordingly, we affirm Stevens' judgment of sentence.

---

find Rule 1925(b) waiver appropriate despite the existence of a trial court opinion addressing the specific claim raised in Stevens' appellate brief. *Id.* at 261.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/9/2023