J-A07013-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| THOMAS BOYER | : | |
| | : | |
| Appellant | : | No. 597 MDA 2023 |

Appeal from the PCRA Order Entered March 29, 2023
In the Court of Common Pleas of Dauphin County
Criminal Division at No: CP-22-CR-0003791-2016

BEFORE: STABILE, J., SULLIVAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STABILE, J.: **FILED: SEPTEMBER 25, 2024**

Appellant, Thomas Boyer, who is serving a sentence of life imprisonment for first degree murder, appeals from an order denying relief under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541—9546. We affirm in part, vacate in part, and remand for further proceedings.

The evidence of record demonstrates that Appellant knew the victim, Ted McCarty. Several days before McCarty's death, Appellant was drinking and smoking marijuana on his porch in Lower Paxton Township when McCarty approached and asked if he could buy some marijuana. Appellant sold him some marijuana. The next day they drank beer and smoked marijuana together on McCarty's porch.

On September 8, 2015, Luisa Breban, McCarty's roommate, noticed that he had not been home for several days. Breban, who was vision impaired,

---

[*] Former Justice specially assigned to the Superior Court.

was assisted in some everyday tasks by her friend Monica Ramos. On this date, Ramos arrived at Breban's apartment to retrieve Breban's laundry. Ramos immediately noticed a strange, putrid smell in the apartment and music coming from McCarty's room. After knocking, Ramos opened the door to McCarty's room and found his lifeless body covered in blood. Ramos started screaming and ran to the porch to call 911. Neighbors heard her and gathered on the porch. Ramos, shaken by what she had witnessed, recalled that she handed the phone to a young man, later identified as Appellant, who placed the emergency call.

Detective Jarrett Ferrari was placed in charge of the investigation. Initially, due to the condition of the victim's body, it was unclear whether this was a homicide or a death from natural causes. Just days after the murder, Detective Ferrari met with Appellant, who was sitting with others on his porch near the victim's apartment. Appellant told him that he had seen and spoken briefly to McCarty at around ten o'clock on the Friday evening before the body was found. Shortly thereafter, autopsy results revealed that McCarty had been stabbed 75 times, and a homicide investigation officially began.

Police had several interactions with Appellant after the homicide. On September 18, 2015, Detective Ferrari interviewed Appellant. Appellant mentioned that he knew how much money McCarty made each month, and that he saw McCarty with money on the Friday before he was found dead. Appellant also was interviewed by Sergeant Todd Witmer of the Lower Paxton Police Department on October 7, 2015. Appellant told Sergeant Witmer that

he "heard [McCarty] was naked as a butterball turkey and stabbed and there was blood everywhere."  N.T., 3/24/18, at 469.

In May 2016, while incarcerated on other charges, Appellant contacted Detective Ferrari to discuss the murder.  The trial court summarized the detective's interview with Appellant as follows:

On Friday, September 4, 2015, [Appellant] indicated he was feeling stressed over the fact that his girlfriend Moniqua Adams was not being a good mother to her child, Amira McLaughlin. Moniqua's mother, Vicki Adams, was trying to help.  It reminded [Appellant] of his own mother's shortcomings, including her not believing [Appellant] when he told her that his two older brothers had molested him, which led to [Appellant] being placed in psychiatric treatment.  Late that Friday night [Appellant] went over to McCarty's house because he needed to talk to someone. It was [Appellant's] understanding that McCarty had been through treatment and had coping skills.  McCarty opened the door and let [Appellant] in.  McCarty led [Appellant] to his bedroom and, on the way there, [Appellant] saw and grabbed a knife from the kitchen counter because he really did not know McCarty very well. McCarty did not have a shirt on and sat down on his bed and started smoking crack.  [Appellant] smoked some weed, claiming he did not do crack.  At that point, McCarty offered [Appellant] $400 to "suck his dick."  [Appellant] told him "fuck no I don't do that shit," and tried to get out of the room.  McCarty stood by the door, which was closed, and then pushed [Appellant] onto the bed.  The two started to wrestle and [Appellant] told McCarty to stay away from him and that he just wanted to leave.  When McCarty wouldn't stop, [Appellant] took out the knife and started stabbing him.  He could not put a number on how many times he stabbed McCarty, but described it as "endlessly."  He told Agent Ferrari and Sergeant Gautsch that he did not approve of "faggots," and that he was having flashbacks about being molested, along with others in his life who had been sexually abused.

Pa.R.A.P. 1925 Opinion, 3/25/20, at 3-4 (cleaned up).  Appellant told police that after stabbing McCarty, he went home, threw away his bloody clothes

- 3 -

and knife, showered, and went to bed. He also mentioned that he took Seroquel to sleep, and Celexa for mood swings. Appellant maintained that he acted in self-defense and told the officers that he needed to tell someone because it was eating away at him. At the end of his statement, he added that Detective Ferrari and Sergeant Gautsch had treated him fairly, that he was not under the effects of drugs or alcohol, and that he had not been offered any promises or been threatened. Agent Ferrari later testified that throughout the interview, Appellant was calm, cooperative, understood the questions asked, and did not appear to be under the influence of any drugs. Appellant stated that he understood his **Miranda** rights.

Appellant was charged with criminal homicide and possession of an instrument of crime. He filed a motion to suppress his inculpatory May 2016 statement to police, claiming that it was involuntary. He offered uncontradicted evidence during his suppression hearing that he had refused his Celexa and Seroquel for several days between April 28, 2016, and his interview on May 17, 2016, including the day before the interview. His medical record indicated that he took his prescribed medications upon his return from the interview. The court denied his motion to suppress, and the case proceeded to a jury trial.

During trial, counsel for Appellant argued in his closing statement that Appellant acted in the heat of passion, and therefore his conduct amounted to third-degree murder:

> This was, you know, we sometimes refer to it as heat of passion, something triggered something with Teddy [the victim], and Teddy was murdered in such a way, okay, that it was . . . with malice, but it wasn't first-degree murder. It was someone killing him in a rage. And as the judge is gonna instruct you for third-degree murder, third degree is what that would be, okay? It's someone is triggered, as Sergeant Witmer said, irritated by something, something happens to someone, that's what you see in this scene. You don't see a first-degree murder. You see an irrational response. You see a heat of passion. Someone is not stabbed 75 times, okay, unless there's, you know, an irritant, a heat of passion going on there, for whatever reason.

N.T., 10/24/18, at 477.

After the district attorney's closing, the court stated that it would not mention "heat of passion" to the jury because that element involved voluntariness and did not fit within the instruction for third-degree murder. *Id.* at 491. Appellant's counsel did not seek an instruction on voluntary manslaughter. Nor did the court charge on voluntary manslaughter; it only charged on first- and third-degree murder.

The jury found Appellant guilty of first-degree murder and possession of an instrument of crime. The court sentenced Appellant that same day to life imprisonment. This Court affirmed Appellant's judgment of sentence on direct appeal.

Appellant filed a timely *pro se* PCRA petition alleging that trial and direct appeal counsel were ineffective for failing to introduce his mental health

records.[1]   The court appointed PCRA counsel, who moved to withdraw.

Counsel's petition to withdraw stated in relevant part:

> 38. [Appellant] alleges trial counsel erred in failing to introduce his mental health records.
>
> 39. [Appellant]'s mental health concerns were addressed in the suppression hearing, in that he purposefully failed to take his medication prior to the May 17, 2016, interview with Detective Ferrari.
>
> 40. [Appellant]'s mental health records were not relevant at trial.
>
> 41. A mental health diagnosis is not an affirmative defense to homicide.
>
> 42. While [Appellant] confessed to the homicide, he is now arguing that the confession was false and that he did not commit the homicide.
>
> 43. To prove that a person is incompetent to stand trial, [Appellant] must prove, by a preponderance of the evidence, that "he was either unable to understand the nature of the proceedings against him or to participate in his own defense." ***Commonwealth v. Santiago***, 855 A.2d 682, 695 (Pa. 2004) (citations omitted).
>
> 44. [Appellant] has not alleged incompetency.  [Appellant] through his confession and written *pro se* filings demonstrates his ability to understand the nature of the proceedings against him and he has participated in his own defense.
>
> 45. To prove that a person is guilty but mentally ill, [Appellant] must convince the jury, beyond a reasonable doubt, that "the person is guilty of an offense, was mentally ill at the time of the commission of the offense and was not legally insane at the time of the commission of the offense."  18 Pa.C.S.A. § 314(a).
>
> 46. A person is "mentally ill" if, "as a result of mental disease [or] defect, lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the [requirements] of the law."  18 Pa.C.S.A. § 314(c)(1).

---

[1] Appellant's mental health records are not in the certified record of this case.

47. A person is "legally sane" if, "[a]t the time of the commission of the act, the defendant was laboring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing or, if he did know it, that he did not know he was doing what was wrong." 18 Pa.C.S.A. § 314(c)(2).

48. The record is clear that [Appellant] was prescribed mental health medication; however, there has been no evidence or allegation that would support a finding [Appellant] was "mentally ill" at the time of the homicide.

PCRA Counsel's Motion To Withdraw, 5/26/22, ¶¶ 38-48. Counsel's motion did not address whether the mental health records were relevant to establish that Appellant's conduct constituted voluntary manslaughter instead of first-degree murder.

On June 1, 2022, the PCRA court granted counsel's motion to withdraw and denied PCRA relief. On October 24, 2022, the PCRA Court issued a memorandum opinion and a notice of intention to dismiss Appellant's PCRA petition. On March 29, 2023, the PCRA court entered an order dismissing the petition. Appellant filed a timely appeal to this Court. Without ordering Appellant to file a statement of matters complained of on appeal, the PCRA court filed a short Pa.R.A.P. 1925(a) opinion incorporating its October 24, 2022 memorandum by reference and recommending that this Court affirm the order of dismissal.

In this Court, Appellant filed a *pro se* brief raising several claims of ineffective assistance of counsel. In particular, Appellant asserts that all counsel, including PCRA counsel, were ineffective for failing to use Appellant's mental health records in his defense. Appellant lists close to twenty contacts

with or visits to various facilities and programs due to his mental illness. Appellant's Brief at 8. Appellant also alleges that he appeared at least twice in Mental Health Court before the same judge who presided over his criminal trial. *Id.* Appellant claims that he killed McCarty because McCarty caused him to fly into an uncontrollable rage by making sexual advances. *Id.* at 15. Appellant's rage was triggered, he claims, due to the sexual abuse he suffered all his life and his severe mental illness. *Id.* He asserts that he begged his attorneys to review his mental health records, but they refused to do it because his records were too voluminous. *Id.* at 11-12. He alleges that use of these records during trial would have reduced his offense to voluntary manslaughter. *Id.* at 14.

The Commonwealth's brief in this appeal consists solely of 1½ pages of argument. Regarding Appellant's mental health records, the Commonwealth merely states, "Appellant . . . claimed that trial counsel was ineffective for failing to introduce his mental health records. Appellant failed to establish the relevance of these records in the lower court. He did not claim that he was incompetent at any point." Commonwealth's Brief at 4-5.

We begin with our standard of review for an order dismissing a PCRA petition:

> Our review of a PCRA court's decision is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error. We view the record in the light most favorable to the prevailing party in the PCRA court. We are bound by any credibility determinations made by the PCRA court where they are

supported by the record. However, we review the PCRA court's legal conclusions *de novo.*

***Commonwealth v. Staton***, 184 A.3d 949, 954 (Pa. 2018).

Although Appellant's brief is somewhat inartful, we read it to contend that PCRA counsel and prior counsel were ineffective for (1) failing to argue that Appellant was guilty of voluntary manslaughter instead of first-degree murder because he was acting under the heat of passion and (2) failing to present evidence of his mental health history in support of a claim of heat of passion voluntary manslaughter.

These issues present layered claims of ineffectiveness against PCRA counsel based on her failure to advance an ineffectiveness claim against trial and appellate counsel. To be eligible for PCRA relief, the petitioner must prove by a preponderance of the evidence that his conviction or sentence resulted from one or more of the enumerated circumstances found in section 9543(a)(2), which includes ineffective assistance of counsel. ***See*** 42 Pa.C.S.A. § 9543(a)(2)(i). To prevail on an ineffective assistance of counsel claim, the petitioner has the burden to prove: "(1) the underlying substantive claim has arguable merit; (2) counsel whose effectiveness is being challenged did not have a reasonable basis for his or her actions or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance." ***Commonwealth v. McCready***, 295 A.3d 292, 298-99 (Pa. Super. 2023) (cleaned up).

Appellant may raise claims of PCRA counsel's ineffectiveness in this appeal. ***Commonwealth v. Bradley***, 261 A.3d 381, 401 (Pa. 2021) ("after a PCRA court denies relief, and after obtaining new counsel or acting *pro se*, [a petitioner may] raise claims of PCRA counsel's ineffectiveness at the first opportunity to do so, even if on appeal"). "Whe[n] a petitioner alleges multiple layers of ineffectiveness, he is required to plead and prove, by a preponderance of the evidence, each of the three prongs of ineffectiveness relevant to each layer of representation." ***Commonwealth v. Parrish***, 273 A.3d 989, 1004 n.11 (Pa. 2022). "In determining a layered claim of ineffectiveness, the critical inquiry is whether the ***first attorney*** that the petitioner asserts was ineffective did, in fact, render ineffective assistance of counsel." ***Commonwealth v. McCready***, 295 A.3d 292, 299 (Pa. Super. 2023) (emphasis in original). Our Supreme Court has provided that, "[i]n some instances, the record before the appellate court will be sufficient to allow for disposition of any newly-raised ineffectiveness claims," though, "in other cases, the appellate court may need to remand to the PCRA court for further development of the record and for the PCRA court to consider such claims as an initial matter." ***Bradley***, 261 A.3d at 402. In support of a remand for an evidentiary hearing on PCRA counsel's ineffectiveness, a petitioner is "required to provide more than mere boilerplate assertions of PCRA counsel's ineffectiveness." ***Id***. The petitioner "has the burden to persuade this Court

that the PCRA court erred and that such error requires relief." ***Commonwealth v. Wholaver***, 177 A.3d 136, 144–45 (Pa. 2018).

Under Pennsylvania law, two different mental states can support a charge of voluntary manslaughter, one of which is that a person is guilty of "heat of passion" voluntary manslaughter if he acts "under a sudden and intense passion resulting from serious provocation by … the individual killed." 18 Pa.C.S.A. § 2503(a)(1); ***see also Commonwealth v. Soltis***, 687 A.2d 1139, 1142 (Pa. Super. 1996). Mere words or insults do not constitute sufficient provocation for heat of passion voluntary manslaughter. ***See Commonwealth v. Berry***, 336 A.2d 262, 264 (Pa. 1975) (words of insulting and scandalous nature not sufficient cause of provocation to reduce first degree murder to voluntary manslaughter). It is important to observe, however, that evidence of a defendant's mental health diagnoses may be admissible to disprove the intent element of first-degree murder when he claims that he acted in the heat of passion. ***Commonwealth v. McCusker,*** 292 A.2d 286, 290-91 (Pa. 1972) ("[a]pplying the established principles of relevancy to a murder prosecution where a defendant asserts that he acted in the heat of passion, it seems clear that any evidence-lay or psychiatric-pertinent to that defense should be admissible"). ***McCusker*** continues to be good law. ***See Commonwealth v. Rizor***, 304 A.3d 1034, 1037 n.8 (Pa. 2023) (citing ***McCusker***); ***Commonwealth v. Reyes***, 2023 WL 8806154 (Pa. Super., Dec. 20, 2023) (same).

This case, as stated above, involves a layered ineffectiveness claim as permitted on appeal by *Bradley*. The first layer of alleged ineffectiveness is trial counsel's purported failure to raise a voluntary manslaughter argument or seek to introduce Appellant's mental health records in support of a voluntary manslaughter argument. The second layer of alleged ineffectiveness is PCRA counsel's purported failure to challenge trial counsel's failure to raise these issues. The performance of counsel in Appellant's direct appeal is not at issue, because it would not have been possible for direct appeal counsel to raise these claims of ineffectiveness on direct appeal.

Based on the current record, we are unable to review these claims of ineffectiveness. We see no mention of voluntary manslaughter, or whether Appellant's mental health records establish voluntary manslaughter, in the record. Although trial counsel argued in his closing statement that Appellant's acts took place under the heat of passion, he suggested that this called for a verdict of third-degree murder. He did not argue that Appellant's conduct constituted voluntary manslaughter or seek a jury instruction on voluntary manslaughter. Nor did PCRA counsel discuss voluntary manslaughter in her petition to withdraw her representation of Appellant. Finally, the PCRA court did not address the issue of voluntary manslaughter in its October 24, 2022 memorandum opinion. All that the court said regarding Appellant's mental health records was the following:

> In this case, [Appellant] cannot establish that trial counsel lacked
> an objective reasonable basis for not introducing his mental health

- 12 -

> records because the records were not relevant. [Appellant] did not allege incompetency prior to trial and is not alleging incompetency now. Thus, [Appellant] cannot establish that trial counsel was ineffective for not introducing his mental health records. We find this claim fails.

Memorandum Opinion, 10/24/22, at 6-7.

**Bradley** observed that in certain cases, "the appellate court may need to remand to the PCRA court for further development of the record and for the PCRA court to consider such claims as an initial matter." **Id.**, 261 A.3d at 402. This is one such case. We hold that remand is necessary for consideration of whether Appellant's trial counsel was ineffective for failing to argue voluntary manslaughter or present Appellant's mental health records in support of a voluntary manslaughter argument, given Appellant's claim of mental health problems requiring close to twenty visits to mental health facilities, his extremely violent act of stabbing McCarty 75 times, and his claim that the victim provoked the attack by making sexual advances and attempting to prevent Appellant from leaving the bedroom.[2] In addition, remand is necessary for consideration whether PCRA counsel was ineffective for failing to challenge trial counsel's failure to raise these issues.

---

[2] If the PCRA court accepts this claim as true, it arguably would demonstrate that mere words or insults did not spark Appellant's attack. **Compare Reyes**, 2023 WL 8806154, at *8 (holding, on review of order denying PCRA relief from first-degree murder conviction, that trial counsel was not ineffective for failing to seek jury instruction on voluntary manslaughter committed in heat of passion; victim's insult about petitioner's mother and accusation that petitioner sexually assaulted his minor nephew did not constitute sufficient provocation to support possible finding of voluntary manslaughter).

The PCRA court correctly dismissed all other issues raised in Appellant's PCRA petition. The PCRA court reasoned:

> [Appellant] claims that he is eligible for PCRA relief because … his confession should have been suppressed; … insufficient evidence was presented to support his "false" confession; and … the Commonwealth erred in discussing the elements of the crime in closing argument. [These three] claims have been previously litigated in [Appellant]'s direct appeal to the Superior Court of Pennsylvania. *See Commonwealth v. Boyer*, 2039 MDA 2019. [Appellant]'s first PCRA claim states that his confession should have been suppressed. However, the Superior Court of Pennsylvania found that his confession was voluntary and affirmed this Court's decision regarding the suppression issue. [Appellant]'s second PCRA claim states that insufficient evidence was presented to support his confession. Again, the Superior Court of Pennsylvania found that the Commonwealth presented sufficient evidence to support the charges and the verdict. [Appellant]'s sixth claim states that the Commonwealth erred in discussing the elements of the crime in closing argument. The Superior Court of Pennsylvania found that this Court's reading of the correct jury charge remedied any potential harm that may have been caused by the Commonwealth's statement.

Memorandum at 5. The PCRA court also wrote:

> [Appellant] claims that three witnesses, William Knight, Darnell Henderson, and Amber Dickey, should have been called as defense witnesses to testify that Derrick Gardner killed the victim. PCRA counsel was granted funds to obtain a private investigator to locate the proposed witnesses. Upon review of the interviews of the proposed witnesses, it is clear that Darnell Henderson and Amber Dickey have no knowledge of the murder. The private investigator was unable to locate William Knight. Again, [Appellant] is unable to establish that trial counsel lacked an objective reasonable basis for failing to call the proposed witnesses because they have stated that they do not have information regarding this murder. Thus, we find [that these] claims fail.

*Id.* at 7. We agree with the PCRA court's analysis in both these regards.

For the foregoing reasons, we affirm the order dismissing Appellant's PCRA petition in part, vacate it in part, and remand for further proceedings.

Order affirmed in part and vacated in part. Case remanded for further proceedings in accordance with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 09/25/2024